IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SHONDOLYN BLEVINS,

     Petitioner,

v.                               CASE NO. 4:17-cv-443-MW-GRJ

WARDEN, FCI TALLAHASSEE,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court following remand by the Eleventh

Circuit.  ECF No. 40.  Petitioner initiated this case by filing a *pro se* Petition

for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  ECF No. 1.

Petitioner is a federal prisoner presently confined at the Federal Detention

Center – SeaTac, in Seattle, Washington.  The Petition stems from a prison

disciplinary proceeding against Petitioner while she was confined at FCI-

Tallahassee which resulted in the loss of good conduct time as well as

other sanctions.  The Court granted Respondent's motion to dismiss the

Petition for failure to exhaust administrative remedies and, alternatively,

denied the Petition on the merits.  *See* ECF Nos. 16 (motion to dismiss), 28

(Report and Recommendation), 30 (Order accepting the Report and

Recommendation).  Petitioner appealed and the Eleventh Circuit reversed

and remanded for further consideration of the exhaustion issue as well as Petitioner's arguments on the merits.  ECF No. 40.

Pursuant to the remand, the Court ordered the parties to provide supplemental briefing.  *See* ECF Nos. 46 (Respondent's supplemental memorandum); 51 (Petitioner's reply).  On remand, Respondent waives exhaustion as an affirmative defense and argues that the Petition should be denied on the merits.  ECF No. 46.  Upon due consideration of the Petition, the administrative record, and the parties' memoranda, it is respectfully recommended that the Petition be denied on the merits.

## I.  Background

The record of the disciplinary proceeding (ECF No. 16-1, 16-2, and 46-1) reflects the following.  On September 19, 2016, FCI-Tallahassee Officer C. Roberts received an envelope in the mail room addressed to "Dumb bitch C. Roberts."  ECF 16-1 at 4.  The envelope contained a BP-148 "Inmate Request to Staff" form which read as follows:

> Dumb ass cracker bitch I am built to last. Old washed out hag.
> I am not concerned about that little game you played with my
> DHO hearing. Bitch you better worry about me using everything
> you do to show a Federal Court how unconstitutional
> the Disciplinary System is.
>
> You see dumb bitch it has always been my argument that
> the DHO process is unconstitutionally vague and leaves too
> much room for bureau interpretation and this dumb shit is
> just what I am speaking of.

> So bitch come again with something better, because I have 7
> motherfucking years left dumb white ho and whether I'm in
> this cell or on the compound you dick suckers can't hold me
> no longer.
>
> So kiss my big black ass. I am tired of you dumb ass Tallahassee
> employees.
>
> Yeah bitch write a shot ho I'm going to use it in support of
> my mental anguish claim.
>
> You bitches want to be lowdown and use your authority to
> hurt somebody. Okay Bitch you hurt me now I'm going to
> ask a federal judge to make you pay me for this hurt.
>
> With your ugly cheap looking dusty ass. I'm 45 how old are
> you?? You look 75!!

*Id.*; ECF No. 16-1 at 19.  The form was signed "Shondolyn Motherfucking

Blevins".  *Id.*

Officer Roberts submitted Incident Report No. 2897384 charging

Petitioner with three offenses.  ECF No. 16-1 at 16.  Officer Roberts quoted

the contents of Petitioner's "request" and stated that she felt threatened by

Petitioner.  The report charged Petitioner with "[t]hreatening another with

bodily harm or any other harm", a Code 203 "high severity level prohibited

act" under the BOP regulations; "[i]nsolence toward a staff member", a

Code 312 "moderate severity level prohibited act"; and "[u]sing abusive or

obscene language", a Code 404 "low severity level prohibited act".  *Id.; see*

28 C.F.R. § 541.3 (2011).

The incident report was delivered to Petitioner by Officer Singletary, a representative of the Unit Disciplinary Committee (UDC).  ECF No. 16-1 at 16.  Before the UDC, Petitioner pleaded not guilty, stating that Officer Roberts had "antagonized" her, "prolonged my DHO hearing unnecessarily" (in a different case), and that Petitioner was "temporarily insane [and] had to go to psychology".  *Id.*  Based on the severity of the charge, the UDC referred the matter to a Disciplinary Hearing Officer (DHO) for further action.  *Id.*

Petitioner received a notice of her DHO hearing rights on September 23, 2016.  *Id.* at 23.  Petitioner received and signed the notice of the DHO hearing on September 28, 2016.  She indicated that she did not wish to be assisted by a staff representative at the hearing nor did she wish to present any witnesses.  *Id.* at 25.

The DHO hearing was held on September 29, 2016.  Petitioner acknowledged that she had received the incident report, understood her rights, and was ready to proceed without a staff representative or witnesses.  Petitioner stated that she was "not guilty by reason of insanity".

*Id.* at 28.[1]  The inmate request that Petitioner sent to Officer Roberts was admitted into evidence.  *Id.*

The DHO issued a report on October 14, 2016, finding Petitioner guilty of the prohibited offenses of Code 312 "Insolence Toward Staff" and Code 404 "Using Abusive Language." The DHO did not find Petitioner guilty of Code 203 "Threatening another with bodily harm or any other offense." ECF 16-1 at 28-29. In reaching that conclusion, the DHO relied upon the statement of the reporting officer and Petitioner's signed inmate request to staff. ECF 16-1 at 29. The DHO did not find Petitioner's claim of insanity credible based on her stated intention to use the incident report to support her "mental anguish" claim. ECF 16-1 at 29.  Petitioner was sanctioned with the loss of 14 days of good conduct time, forfeiture of 5 days of non-vested good conduct time, 45 days of disciplinary segregation, and the loss of telephone, commissary, and visiting privileges for six months.  *Id*.  The DHO explained that the sanctions were imposed due to

---

[1] The DHO Report reflects, apparently erroneously, that Petitioner requested witnesses. The Report also reflects that an inmate witness, Julia Nguyen, appeared at the hearing. ECF No. 16-1 at 28.  The Report does not indicate whether Julia Nguyen made any statement.  It is unclear whether Nguyen appeared for Petitioner or in support of the charges.  Petitioner does not claim in this case that she was denied the right to call witnesses or that her rights were violated in connection with the DHO's consideration of any statement made by witnesses at the hearing.  *See* ECF No. 1.

the severity of the offenses, to hold Petitioner accountable for her behavior, and to deter future offenses. *Id.*

After pursuing administrative remedies[2], Petitioner filed the instant habeas corpus petition. ECF No. 1. The Respondent addresses the claims in the Petition in the following order for the sake of clarity, *see* ECF No. 46: (A) the BOP disciplinary rules and regulations are unconstitutionally vague (Petition Ground 6); (B) Officer Roberts made a "false charge" under Code 203 to force a DHO hearing (Petition Ground 2); (C) the DHO was biased and refused to allow her to present a defense, was rude, and had a "closed mind" (Petition Ground 5); (D) the DHO failed to comply with BOP disciplinary policy because the DHO was required to remand the incident report "once 203 was expunged" (Petition Ground 3); (E) the loss of good time credits was an excessive sentence outside the disciplinary policy (Petition Ground 4); and the BOP failed to process her appeal properly (Grounds 1, 7, 8).

## II. Standard of Review

A prisoner has a liberty interest (in this case, created by federal law) in her earned good conduct time and, accordingly, must receive due

---

[2] Because Respondent has waived exhaustion as an affirmative defense, it is unnecessary to discuss the specifics of Petitioner's exhaustion efforts.

process before those credits are revoked in a prison disciplinary proceeding. *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *O'Bryant v. Finch*, 637 F.3d 1207, 1213 (11th Cir. 2011) (same as to state prisoner deprived of state-created liberty interest in gain time).  In *Wolff,* the Supreme Court held that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of [constitutional] rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556.

> The Supreme Court has held that, when a prison disciplinary proceeding may result in the loss of good time credits, a prisoner is entitled to three procedural protections: (1) advance, written notice of the charges against him and at least 24 hours to prepare a defense; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his own behalf; and (3) a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action.

*Stinger v. Grayer*, 159 F. App'x 914, 915 (11th Cir. 2005) (citing *Wolff*, 418 U.S. at 563–66). The revocation of good time credits "satisfies the minimal requirements of due process if the findings of the disciplinary officer are supported by 'some evidence.'" *Id.* (quoting *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985)). This analysis requires the district court to consider "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* (quoting *Hill*, 472 U.S. at 455–55)); *see Young v. Jones*, 37 F.3d 1457, 1460 (11th Cir.

1994) (when reviewing claims involving prison disciplinary proceedings, a federal court is limited "to determin[ing] whether an inmate receive[d] the procedural protections provided by *Wolff* and whether 'some evidence' exists which supports the hearing officer's determination").

"*Wolff* also holds that a prison hearing board must be 'sufficiently impartial to satisfy the Due Process Clause.'" *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1350 (11th Cir. 2016) (quoting *Wolff*, 418 U.S. at 571, 94 S. Ct. at 2982); *see also Edwards v. Balisok*, 520 U.S. 641, 647-48 (1997) (holding that if established, a prisoner's allegation of deceit and bias by the hearing officer at his disciplinary proceeding "would necessarily imply the invalidity of the deprivation of his good-time credits"). The Court in *Wolff* approved a disciplinary process as sufficiently impartial where it provided for investigation and an initial interview with the inmate by a staff member, followed by a hearing before a committee comprised of other prison officials who were not part of the investigation. *Wolff*, 418 U.S. at 571. As to the particular decisionmaker (in *Wolff*, an Adjustment Committee), the Court considered these factors:

> The Committee is not left at large with unlimited discretion. It is directed to meet daily and to operate within the principles stated in the controlling regulations, among which is the command that "full consideration must be given to the causes for the adverse behavior, the setting and circumstances in which it occurred, the man's

accountability, and the correctional treatment goals," as well as the direction that "disciplinary measures will be taken only at such times and to such degrees as are necessary to regulate and control a man's behavior within acceptable limits and will never be rendered capriciously or in the nature of retaliation or revenge."

*Id.* The Court held: "We find no warrant in the record presented here for concluding that the Adjustment Committee presents such a hazard of arbitrary decisionmaking that it should be held violative of due process of law." *Id*.

## III. <u>Discussion</u>

### A. *Whether BOP Rules and Regulations are Unconstitutionally Vague*

Petitioner argues, without elaboration, that the BOP's disciplinary rules are unconstitutionally vague and ambiguous and allow too much room for staff interpretation and arbitrary enforcement. *See* ECF No. 1 (Petition Ground 6). In response, the Respondent contends that Petitioner's claim is itself too vague and conclusory to support habeas relief because Petitioner fails to challenge any particular rule or explain why the rules that she was found to have violated are unconstitutionally vague. ECF No. 46 at 15-16.

Petitioner was found guilty of violating rules prohibiting "[i]nsolence towards a staff member" (Code 312) and "[u]sing abusive or obscene language," (Code 404) set forth at 28 C.F.R. § 541.3. The Respondent argues that "[a] person of ordinary intelligence would understand that

delivering a writing to a BOP staff member stating, among other things,

'[d]umb ass cracker bitch,' '[o]ld washed out hag,' '[b]itch,' 'dumb bitch,'

'dumb white ho,' 'you dick suckers,' and 'dumb ass Tallahassee employees'

constitutes rude and disrespectful behavior towards a staff member and is

a use of insulting language."  ECF No. 46 at 16.

In *United States v. Batchelder*, 442 U.S. 114 (1979), the Supreme

Court held:

> It is a fundamental tenet of due process that "[n]o one may be
> required at peril of life, liberty or property to speculate as to the
> meaning of penal statutes." *Lanzetta v. New Jersey*, 306 U.S. 451,
> 453, 59 S. Ct. 618, 619, 83 L. Ed. 888 (1939). A criminal statute is
> therefore invalid if it "fails to give a person of ordinary intelligence fair
> notice that his contemplated conduct is forbidden." *United States v.
> Harris*, 347 U.S. 612, 617, 74 S. Ct. 808, 812, 98 L. Ed. 989 (1954).

*Batchelder*, 442 U.S. at 123; *Kolender v. Lawson*, 461 U.S. 352, 357, 103

S. Ct. 1855, 1858 (1983) ("[T]he void-for-vagueness doctrine requires that

a penal statute define the criminal offense with sufficient definiteness that

ordinary people can understand what conduct is prohibited[,] and in a

manner that does not encourage arbitrary and discriminatory

enforcement.").

The rules under which Petitioner was convicted would give a person

of ordinary intelligence fair notice that the language used by Petitioner in

her letter to Officer Roberts amounted to "insolence" to the officer as well

as "abusive" and "obscene" language.  The missive cannot reasonably be
read in any fashion other than as a purposeful effort to berate and insult
Officer Roberts with foul language, name-calling, and threats.  *See, e.g.*,
*Lerma v. Bureau of Prisons*, 2003 WL 22121092, at *2-6 (N.D. Tex. Sept.
12, 2003) (district court order denying § 2241 challenge to prison
disciplinary conviction for insolence toward staff member where inmate
raised his voice, became argumentative, and demanded explanation for
change in rules, and explaining, among other things, "BOP Prohibited Act
Code 312 provides that a federal petitioner may not act with 'insolence
towards a staff member,' and the violation of Code 312 is punishable as a
moderate category offense;" Code 312 is not unconstitutionally vague or
overbroad; the term "insolence" is "readily understood to prohibit
disrespectful, abusive, or offensive behavior, and the prohibition against
insolence bears a direct relation to the prison administration's need to
maintain decorum between inmates and prison officials"); *Cardenas v.
Adler*, 2011 WL 2785099, at *5-7 (E.D. Cal. July 13, 2011) (finding Code
312 valid, explaining "[t]he impact of allowing inmates to act in a
disrespectful manner towards correctional officers creates potential safety
concerns if prisoners do not view officers as being in positions of authority

over the inmate population" and "[a] prisoner has no right to address prison officials in a disrespectful or abusive manner.").

In the same vein, a person of ordinary intelligence would understand that the language used by Petitioner toward Officer Roberts was both "abusive"[3] and "obscene,"[4] containing a litany of insults and curses. Contrary to Petitioner's claim, there was no need for any staff "interpretation" to conclude that Petitioner should be charged with a Code 404 violation. The meaning of her written words is quite clear to any reader.

In sum, the BOP regulations that Petitioner was convicted of violating are not unconstitutionally vague and ambiguous, nor were they applied in an arbitrary manner in view of the contents of Petitioner's communication to Officer Roberts. Petitioner is not entitled to habeas relief on this claim.

## B. "False" Code 203 Charge to Force DHO Hearing

Petitioner claims that "the reporting officer knowingly and intentionally filed a false 203 threat allegation against me so that I am forced to go to DHO". ECF No. 1 (Petition Ground 2). She argues that had the Code 203

---

[3] *See* "abusive", Dictionary.com *available at* https://www.dictionary.com/browse/abusive ("using, containing, or characterized by harshly or coarsely insulting language").
[4] *See* "obscene", Dictionary.com *available at* https://www.dictionary.com/browse/obscene ("offensive to morality or decency; indecent; depraved").

charge not been included, then she would only have been subject to a UDC hearing and the UDC cannot impose sanctions such as loss of good conduct time.  ECF No. 51 at 5.

Under BOP regulations, offenses adjudicated at the UDC level carry limited sanctions.  *See* 28 C.F.R. § 541.7 ("If you committed a prohibited act(s), the UDC can impose any of the available sanctions listed in Tables 1 and 2, *except loss of good conduct sentence credit, disciplinary segregation, or monetary fines*.") (emphasis added).  There is an automatic referral of an incident report to the DHO for offenses deemed "greatest" and "high severity offenses".  28 C.F.R. § 541.7(a)(4) ("If you are charged with a Greatest or High severity prohibited act . . . the UDC will automatically refer the incident report to the DHO for further review.").  Code 203 proscribes "[t]hreatening another with bodily harm or any other offense", and is categorized as a "High Severity Level Prohibited Act".  28 C.F.R. § 541.3.  Because Petitioner was charged with a Code 203 violation, the referral to the DHO was automatic under the regulations.  However, even if Petitioner had not been charged with a Code 203 violation, the UDC also had the authority to refer the report to the DHO "based on the seriousness of the prohibited act(s) charged." 28 C.F.R. § 541.7(a)(3).

Petitioner's claim that the Code 203 charge was made solely for the purpose of elevating her case to the DHO is wholly speculative. Although she was not disciplined for that offense, the charge plainly flowed from her abuse-laden screed against Officer Roberts which, as Respondent argues, could reasonably be construed as threatening bodily harm. But even if the Code 203 charge had not been included, the UDC had the authority to refer the report to the DHO based on the conclusion that the "seriousness of the prohibited act" warranted the referral. *See* ECF No. 16-1 at 16. The DHO's imposition of the sanctions of disciplinary segregation and loss of good conduct time for the Code 312 charge supports a conclusion that the UDC referral to the DHO based on "seriousness of the prohibited act" was warranted, apart from any automatic referral for the Code 203 offense. Petitioner has shown no due-process violation stemming from the referral of the report to the DHO.

## C. DHO Was Biased

Petitioner contends that the DHO "was biased and refused to allow me to present my defense, refused to allow me to speak, was rude [and] had [a] closed mind." ECF No. 1 (Petition Ground 5). Petitioner further claims that the DHO "knowingly participated in a scheme to circumvent rules, regulations, and guidelines she was hired to follow and enforce. The

DHO knowingly intended to deprive the Petitioner of her good conduct time without due process."  ECF No. 51 at 9.

Petitioner points to nothing in the record that supports her claim of bias.  The hearing report reflects that Petitioner made a statement to the DHO in which she claimed "insanity" as a defense.  ECF No. 16-1 at 28-29. The DHO found Petitioner's statement to be "not convincing" because Petitioner's written inmate request to Officer Roberts stated that she intended to use any resulting disciplinary report as support for a "mental anguish" claim.  The DHO found, based on the evidence, that Petitioner had a "serious discipline problem which you clearly indicated by writing this disrespectful inmate request to the reporting officer."  Based on the "greater weight of the evidence," the DHO found that Petitioner committed the two prohibited acts. *Id.* at 29.

This Court has rejected similar claims of general "bias" and "rudeness" asserted by Petitioner in another disciplinary case.  *See Blevins v. Warden, FCI Tallahassee*, 2019 WL 2745745, at *9 (N.D. Fla. May 21, 2019), *report and recommendation adopted*, 2019 WL 2745738 (N.D. Fla. June 28, 2019).  The Court explained:

> After *Wolff*, neither the Supreme Court nor the Eleventh Circuit has elaborated a more specific standard for evaluating a claim of bias on the part of a disciplinary hearing officer. In the analogous context of administrative hearings, the Supreme Court has recognized "a

presumption of honesty and integrity in those serving as
adjudicators." *See Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456,
1464 (1975) ("Without a showing to the contrary, state administrators
are assumed to be men of conscience and intellectual discipline,
capable of judging a particular controversy fairly on the basis of its
own circumstances." (internal quotation marks and citation omitted));
*Schweiker v. McClure*, 456 U.S. 188, 195, 102 S. Ct. 1665, 1670
(1982) (holding that courts "must start . . . from the presumption that
the hearing officers . . . are unbiased."); *see also Piggie v. Cotton*,
342 F.3d 660, 666 (7th Cir. 2003) (stating that prison adjudicators are
entitled to a presumption of honesty and integrity). The party who
alleges bias has the burden of overcoming the presumption of
impartiality. *Schweiker*, 456 U.S. at 195-96, 102 S. Ct. at 1670;
*Withrow*, 421 U.S. at 47-48, 95 S. Ct. at 1464; *Johnson v. U.S. Dep't.
of Agric.*, 734 F.2d 774, 783 (11th Cir. 1984).

*Blevins,* 2019 WL 2745745 at *9.

Here, Petitioner has failed to overcome the presumption of

impartiality afforded to the DHO.  Her claim that the DHO was "rude" "does

not provide a colorable basis to find a due process violation, because it is

conclusory and wholly devoid of factual support."  *Id.* (citing *Nash v. Auburn

Univ.*, 812 F.2d 655, 665 (11th Cir. 1987) (holding, in the context of a

college disciplinary proceeding, that a court may not infer that the

disciplinary board was biased; "[a]ny alleged prejudice on the part of

the board must be evident from the record and cannot be based in

speculation or inference."); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d

504, 518 (10th Cir. 1998) ("[B]ecause honesty and integrity are presumed

on the part of a tribunal, there must be some substantial countervailing

reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." (internal quotation marks omitted)).

Petitioner has not established that the DHO was biased or otherwise acted improperly during the proceeding, and she is therefore not entitled to relief on this claim.

## D.  DHO Was Required to Remand Incident Report

Petitioner contends that the DHO was required to remand the incident report back to the UDC after the Code 203 offense was "expunged".  ECF No. 1 (Petition Ground 3).  This argument is not supported by the applicable regulations.  As discussed above, the remaining charges were properly before the DHO based on the referral for "seriousness" of the offenses.  While BOP policy affords the DHO the discretion to refer a case back to the UDC "when the case does not warrant DHO involvement,"[5] Petitioner points to no authority mandating such action under the circumstances presented here.  This claim presents no basis for habeas relief.

## E.  Excessive Sentence

Petitioner claims that the sanction of loss of good time was "outside disciplinary policy".  ECF No. 1 (Petition Ground 4).  She argues that the

---

[5] BOP Program Statement 5270.09 at 30, *available at* https://www.bop.gov.

BOP regulations are vague and it is unclear whether the DHO had the

authority to sanction her to a loss of good conduct time absent a finding of

repeated prohibited acts within a 12-month period.  ECF No. 51 at 8-9.

Petitioner is incorrect.  Under the applicable BOP Program

Statement, Code 312 is a "Moderate Severity Level Prohibited Act." BOP

Program Statement 5270.09 at 52, *available at* https://www.bop.gov.

Among the available sanctions for such a violation is to "[f]orfeit and/or

withhold earned statutory good time or non-vested good conduct time up to

25% or up to 30 days, whichever is less, and/or terminate or disallow extra

good time[.]" *Id.* at 52. The DHO should "[d]isallow ordinarily up to 25% (1-

14 days) of good conduct time credit available for year." Additional

available sanctions include disciplinary segregation up to three months and

loss of privileges. *Id.* at 52-53.

The sanctions imposed by the DHO (14 days disallowance of good

conduct time, forfeiture of 5 days of non-vested good conduct time,

disciplinary confinement for 45 days, and loss of other privileges) are

clearly and specifically contemplated by the Program Statement for

Petitioner's Code 312 violation.  *See* ECF No. 16-1 at 29.  This claim

presents no basis for habeas relief.

***F.  Claims Pertaining to Exhaustion of Remedies***

Petitioner's remaining claims, set forth in Grounds 1, 7, and 8 of the Petition, all pertain to exhaustion of administrative remedies.  *See* ECF No. 1.  In Ground 1, Petitioner claims that the DHO's failure to provide her with "required material" amounts to a waiver of the exhaustion requirement.  In Grounds 7 and 8, she claims that the Regional Director returned her appeal for frivolous reasons and that the mailroom staff and assistant warden changed policies and procedures to impede her exhaustion efforts.  Because the Respondent has waived exhaustion as an affirmative defense, it is unnecessary to address these claims further.

## IV. <u>Conclusion</u>

For the foregoing reasons, it is respectfully **RECOMMENDED** that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, ECF No. 1, should be **DENIED**.

**IN CHAMBERS** this 16th day of July 2021.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed**

within fourteen (14) days after being served a copy thereof. <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.